## WOODFIN *v.* PHŒBUS and others.

*(Circuit Court, E. D. Virginia.* February 10, 1887.)

1. FEDERAL JURISDICTION—CITIZENSHIP OF PARTIES—CONFLICT OF JURISDICTION —CONSTRUCTION OF WILL—EXECUTORS.

Bill by one of three executors, against co-executors and the legatees, for enforcement of the trusts of the will, and especially for sale of the Hygeia Hotel, situated on the territory of the United States at Fortress Monroe, and erected, held, and maintained by virtue of certain acts of congress, and subject to certain regulations contained in deeds from the secretary of war. The will was probated in the county court of Elizabeth City county, Virginia, where the executors qualified. Bill alleged that plaintiff was a citizen of Massachusetts, and the defendants all citizens of Virginia; that, owing to disagreements and differences between the executors, and for other reasons, it was impossible to execute the trusts of the will without the aid of a court of equity. On general demurrer *held:* (1) The citizenship of the parties as alleged being admitted by the pleadings, and the validity of the will and the regularity of its probate in the state court being conceded, there is no conflict of jurisdiction between that court and this. (2) The allegations of the bill show such a contest and disagreement between executors concerning the administration of the trusts of a will as to bring the case within the usual and ordinary jurisdiction of a court of equity.

2. SAME—CHARACTER OF CONTROVERSY—FORTRESS MONROE.

In such a suit, upon a plea to the jurisdiction, alleging that one of the executors and all of the legatees were citizens, not of Virginia, but were residents of territory within the exclusive jurisdiction of the United States at Fortress Monroe, *held:* (1) The federal court has jurisdiction by reason of the character of the cause, irrespective of the citizenship of the parties. (2) The Hygeia Hotel, being located upon territory of the United States at Fortress Monroe, federal jurisdiction is complete under the federal constitution, (article 1, § 8, cl. 17.) (3) The federal court also has jurisdiction under the federal constitution, (article 3, § 2,) by reason of the necessity for a construction of the several acts of congress, by virtue of which said hotel was erected, and which define the terms upon which it shall be maintained, held, and transferred.

3. SAME—CEDED TERRITORY.

Query: Have the courts of the United States jurisdiction, by reason of the citizenship of parties, when the controversy is between plaintiff, a citizen of one state, and defendants, one of whom is a resident of a different state, and the others of whom are residents on territory ceded by a state to the United States for the purposes of a fort?

*(Syllabus by the Court.)*

In Equity. The opinion states the case.
*White & Garnett* and *John S. Wise,* for plaintiff.
*L. R. Page* and *Sharp & Hughes,* for defendants.

HUGHES, J. The case is before me on the demurrer to the bill. Speaking strictly with reference to the demurrer, I shall now state my conclusions on the questions argued so fully on the seventh and eighth instant. The suit is brought by an executor of a probated will against another executor, an executrix who is also a legatee, and the other legatees. There is no contest over the validity of the will, or question of the proceedings or tribunal by which it was established as the will of the testator. The bill alleges that the will requires a sale of a hotel property, supposed to be worth $400,000 or more, which belonged to the testator,

and which is situated at Fortress Monroe, within the exclusive jurisdiction of the United States. It avers that one of the executors, and of the legatees associated with the plaintiff in his trust, who is testator's widow, desires to purchase the property herself, and persists in this desire, against the advise and friendly remonstrance of her co-executors. It avers that this hotel, which is conducted on a very large scale, has been kept open and continued by the executors since the death of the testator, which occurred on the twenty-fifth of February, 1886. It sets out various circumstances, going to show that the executors are in hopeless antagonism of opinion and purposes in regard to the steps proper to be taken in the further execution of their trust. It prays for a speedy sale of the hotel property, for accounting and accounts, for a receiver, and for injunctions. It sets out that the complainant is a citizen of Massachusetts, and the defendants all citizens of Virginia. It alleges that the hotel property aforesaid, which is known as the Hygeia Hotel, is substantially the only property in the possession of the executors, as such; that it is situated on land which is within the exclusive jurisdiction of the United States; that it is property which the testator was permitted to erect by the United States, under laws of the United States; and that the deed or contract, under which the testator was permitted to erect the buildings and hold and occupy them, was executed by an officer of the United States under the express authority of congressional legislation. It avers that the property which is the subject of this suit is the creation of the laws of the United States, and is within the cognizance of this court, irrespectively of the character and citizenship of the parties to the record in this suit.

At the hearing of the argument on the demurrer, a good many questions were elaborately discussed by counsel which I need only refer to. As already stated, the validity of the probate of the will of the testator is conceded by the bill. No question of probate is before this court. The competency of the county court of Elizabeth City county, which admitted this will to probate, to do so, is conceded by the bill; is certainly not denied by it. I do not think it a debatable question whether the circuit court of Elizabeth City county, as a court of equity, has jurisdiction of controversies which may arise between the executors of the will mentioned in the bill in the administration of their trust. That court certainly has jurisdiction of the controversy in any suit that may arise between the executors in regard to the will. If this court, by reason of citizenship, has jurisdiction also of such controversy, the jurisdiction of the two courts is concurrent; and the jurisdiction of one or the other court, in order to become exclusive, must be exercised before that of the other becomes established.

It is to me equally clear that, within the territory belonging to the United States at Fortress Monroe, jurisdiction is exclusively in the United States, whether exercised by its executive, its congress, or its judiciary. Therefore, as to any jurisdiction operating *in rem* directly upon property within the lands of the United States at that place, and requiring an actual, corporeal, personal exercise *in situ* by an officer present in per-

son in his official character, on the premises, in the performance of offi-cial duty and functions, the jurisdiction of the United States, and of each of its departments, is exclusive of that of the state of Virginia, except in respect of such service of process as was reserved in her act of cession, passed March, 1821. The proper court of Virginia, by virtue of its jurisdiction of *controversies* respecting property at Fortress Monroe, may, by decrees and process *in personam* directed against parties to any suit pending in it, control and dispose of their rights in such property; but I think it is pretty certain, in a case like the present one, if pending in a state court in which the appointment of a receiver to exercise cor-poreal custody of the Hygeia Hotel on the premises should become nec-essary, that the state court could not install such an agent there for that purpose. While this is so, I repeat that I am willing to concede that a state court, having power to determine controversies between parties con-cerning property in litigation before it, would have power, in a proper case, to order a sale of the Hygeia Hotel, which would be valid as be-tween the parties to such a controversy.

Coming to another question much dwelt upon in the argument, I am very confident that this bill presents no conflict of jurisdiction with the probate court of Elizabeth City county. The demurrant herself recog-nizes this fact by having filed a bill for a sale in the chancery court of that county. The powers of a probate court are, in Virginia, not greater than those of the ecclesiastical courts of England, which, with respect to the administration of trusts created by wills, are proverbially courts of "a lame jurisdiction." When the jurisdiction of a court of chancery is invoked by or against an executor, to direct the administration of a will, its power to do so has been held to exist from the beginning of chancery jurisprudence in England, and not in any manner or degree to interfere with that of a probate court, exercising its legitimate jurisdiction as such. Mr. Pomeroy says that the relation subsisting between executors. and administrators, on the one hand, and legatees, distributees, and creditors; on the other, has so many of the features and incidents of an express, active trust that it has been completely embraced within the equitable jurisdiction in England, and also in the United States, where the statutes of states have not interfered to take away or abridge the jurisdiction. Section 156. He gives a full discussion to the character of the several and varying state statutes, (sections 346–352) and, in view of all their provisions, declares that, "although the general jurisdiction of equity over the subject of administration is practically, and even, in the instances of some states, expressly, abolished, still the jurisdiction remains in all matters of trusts created by or arising from the provisions of wills; and that thus a large field is left for the exercise of the equita-ble jurisdiction in the construction of wills, and in the determination and enforcement of equitable rights, interests, and estates created and conferred thereby."

It cannot be pretended, however the case may be in other states, that general chancery powers over the administration of the estates of dece-dents have in Virginia been taken away from courts of equity, as such,

and transferred to courts of probate. And even if the general jurisdiction had been taken away here, still it is laid down by Mr. Pomeroy that the peculiar, ancient, and inherent power of chancery over the trusts created by wills, which are the most sacred of all trusts, has not in any of the states been taken away.

There seems, therefore, to be no doubt of the competency of a court of chancery to assume the direction of the trusts of a will, in a case properly brought before it. Is the present case properly here? It is brought by one of three executors against the two others, all of whom have entered upon the trust. One of the defendant executors is also a legatee, or else, in her character of widow, elects to become a distributee of the estate. The infant children of the decedent, who are the other legatees, are also made defendants. The suit is brought to determine a controversy that has arisen between the complainant and his co-executors as to the sale of the property in their charge. If this were a friendly suit, there would possibly be a doubt whether the case would present such a "controversy" between parties as is contemplated by the first section of the judiciary act of March 3, 1875. But this is no friendly suit. It is a suit arising out of an earnest, actual antagonism of purposes, objects, opinions, and wishes existing between the parties to it, affecting the administration of the estate. One executor seeks to sell the estate, in open competition to the highest bidder. The other wishes to be herself the purchaser, at a price to be ratified by a court. One of them seeks to sell as alleged to be directed by the will. Another of them wishes to hold the property in the family, in a manner deemed by the plaintiff to be in conflict with the direction of the will. Here a question is submitted to the court for its determination, involving the construction of the will and the administration of its trusts, of the most profound moment to the estate and its legatees and distributees. It is clearly a "case" or "controversy" within the jurisdiction of a federal court of chancery. It is a real, unfeigned, actual contention *inter partes.* It is a suit of a character, not only not novel, but such as is usually brought, and is proper to be brought, in a court of equity. If the controversy here be such as is properly cognizable by a court of chancery, and presents, besides, the jurisdictional facts necessary to give jurisdiction to a federal court, then the case is properly here. I think these conditions exist in the present case, as they present themselves on the demurrer.

As long ago as the case of *Doyle* v. *Blake,* 2 Schoales & L. 245, it was held that an executor, who had once taken out powers of administration, cannot discharge himself from his duties, unless he goes on and executes the trusts of the will, or puts the administration into the hands of a court. It was held that, not only had he the choice of going into a court of equity, but that it was his duty to do so. It is urged here that the single fact that the bill prays the court to enjoin proceedings in the probate court of the county of Elizabeth City invalidates the suit, under the decision in *Haines* v. *Carpenter,* 91 U. S. 255. That was a bill in which, as Judge BRADLEY said, the "great object" was to enjoin

proceedings in three different courts of the state, and in which the other principal object was to prevent a multiplicity of suits in the state courts. That suit, in its cardinal object, was a violation of section 720 of the Revised Statutes of the United States forbidding injunctions from federal courts to stay proceedings in state courts. The elimination of that object left no case. The bill was dismissed by the court below, and the decree was affirmed by the supreme court. Here the prayer for an injunction is but an incident of the suit, can be stricken out without prejudicing the suit, and is not at all necessary to the accomplishment of the "great object" of the bill, which is a speedy sale of the Hygeia Hotel.

I repeat what I said the other day, that the will gives no power to the executors to keep the hotel open; that, by keeping it open and conducting it on their own account as long as they have done, they have created an account of huge proportions, unauthorized by the will, which brings them under very grave and heavy responsibilities. As this has been done without authority from the will, it may be a matter of serious consideration whether a court of equity would be willing to let the hotel go on indefinitely without appointing a receiver. On the whole case, I think the demurrer must be overruled, and that the bill must be amended in the particular that has been mentioned; namely, by striking out the prayer for an injunction to stay proceedings in the county court of Elizabeth City county.

---

On February 11th Judge HUGHES delivered the following opinion on on the plea to jurisdiction:

The question now before the court is interesting and important. It involves matters of great value, and both court and counsel are bound to deal with it in a spirit of the utmost candor. I am not conscious of bias in the matter, unless it be the natural and pardonable bias which a court may have in favor of its own jurisdiction.

The case now stands on a plea to the jurisdiction. The matter pleaded is that the executrix, who is widow and a legatee, and the remaining legatees, who are minors, are not citizens or residents of Virginia, but are residents of territory within the exclusive jurisdiction of the United States at Fortress Monroe. To this plea the plaintiff demurs, and alleges as grounds of his demurrer the following, to-wit: (1) This is a suit between the plaintiff and several, three different, defendants, one of whom, Joseph G. Eulton, is a citizen of Virginia; and that this fact gives jurisdiction on the score of the character of parties, even though the other defendants are, as alleged in the plea, not citizens of Virginia or of any other state. (2) That, however the case may be in respect to the citizenship of parties, still the court has jurisdiction by reason of the subject-matter of the suit, and the plea is insufficient.

An examination of the bill shows the following state of facts: It invokes the aid of the court in administering the trusts of a decedent's will;

the only property which the court is called upon to deal with being a
hotel building, which was erected by the testator on land of the United
States, sold and ceded to them, with all jurisdiction, by the state of Vir-
ginia.   The bill contains several averments on this head.   It alleges
that the national government has exclusive jurisdiction over this hotel
property; that this court has exclusive jurisdiction, under the constitu-
tion of the United States, to exercise judicial power over Fortress Mon-
roe, and over this building erected on that territory; that the privilege
of erecting the hotel building was derived under laws of congress through
officers of the United States, whose assent was made by law necessary to
the validity of the testator's title; that a sale of the property can only
be made effectual by the consent and approval of the officer of the
United States, who is named in the deed of the United States to the
testator, which granted him the franchise of erecting the structure known
as the "Hygeia Hotel."   Moreover, the bill calls for a receiver, and avers
in substance that the appointment of a receiver, and the assumption by
the court, through him, of the actual custody of the hotel, is necessary
to doing complete justice in this cause.

Such is the case as now presented to the court by the pleadings.   The
question is whether they show a case, arising under the constitution and
laws of the United States, requiring a construction of their meaning by
this court.   If so, then this court has jurisdiction by virtue of the char-
acter of the cause, no matter who may be parties to the record.   It is a
principle as old as the constitution that whenever, under the second sec-
tion of the third article of the constitution, jurisdiction depends upon
the character of the particular cause, it matters not who may be the par-
ties of record.   And as early as the case of *Cohens* v. *Virginia*, reported
in 6 Wheat. 375–412, the subject was thoroughly discussed by Chief
Justice MARSHALL, and the principle judicially established by the unani-
mous judgment of the supreme court of the United States.   In all the
cases which have since been decided by that court it has been held that,
where a national question arises in any case upon a provision of the con-
stitution or a law of congress, in such manner as to require of the court
a construction of the meaning of the constitution or the law, then a case
of federal jurisdiction is shown, irrespectively of the *status* and relation
of the parties named in the record.   Suits have been brought into the
federal courts where deeds of conveyance from the United States have
constituted a part of the muniments of title to property which was the
subject of suit; neither party making any contest on the title which
emanated from the United States, the real controversy being on the con-
struction of instruments executed after title had passed from the United
States.   It has been held in all these cases that, as there was no dispute
on the validity of the title which passed from the United States, the mere
fact that title had come through a law of the United States which was
unquestioned, did not constitute a case of jurisdiction for a federal
court.

Our inquiry in the present case, therefore, is whether this is a case
arising under the constitution and any law of the United States in such

manner as to require a construction of those instruments by this court. I said yesterday, in the opinion filed on the demurrer to the bill, that, in respect to the parties plaintiff and defendant, the jurisdiction of this court was not exclusive. A state court, if acquiring jurisdiction of parties before this court had acted, would have jurisdiction of the parties and of the controversy in any proper proceeding. But I expressed the opinion that the state court would not have jurisdiction to take corporeal possession of the Hygeia Hotel, by means of a receiver or any other officer, whose personal official presence on the premises, and installment in possession there, would be necessary to a judicial custody of the property; that court could act *in personam* on the parties, and direct and enforce the execution of such conveyances of title as the controversy might require between parties to the record. But if its own custody of the property pending the cause were necessary, and if the delivery of a corporeal possession by its officer at its ending should become expedient, then that court would, I am sure, be without jurisdiction, by decrees *in rem* directly affecting the property, to take, hold, and deliver custody of the property, and to do complete justice in the cause. I think, therefore, that it is necessary for us to observe the distinction between jurisdiction of the controversy and of the parties to it, on one hand, and jurisdiction, on the other hand, of the *res* or *corpus* which is the subject of the suit, and which is to be sold and delivered to a purchaser.

Now, this is a stronger case for the federal jurisdiction than those ordinarily arising under the constitution and laws of the United States, requiring a judicial construction, where the property in litigation is not situated in a territory of exclusive federal jurisdiction. There the property and parties are amenable to federal jurisdiction only by virtue of the right of the federal courts to construe the federal constitution and laws. Here, if we are required to construe those laws, we have a jurisdiction, not only valid for this reason, but necessary to be invoked because of our exclusive jurisdiction over the territory of the federal fortress in which the property is situated, and thereby of the *res* which is the subject of the suit. It seems to me that, if the bill sets forth facts which make it apparent that the question of federal jurisdiction over Fortress Monroe, and over the Hygeia Hotel, is a leading one in the case, it is not necessary for the court to wait until there is a formal denial of any of those facts to determine whether to entertain the suit. If, in any suit, the bill sets out on its face such facts as show that the court has jurisdiction from the citizenship of the parties, it at once assumes jurisdiction, without waiting for an issue to be made up by the pleadings contesting those facts. So I take it, if the bill shows by its averments such a series of jurisdictional facts as make it apparent to the court that it will be necessary to construe the constitution and one or more laws of the United States in conducting the suit, in passing upon the rights of parties and in administering the relief prayed for, then I think it has jurisdiction, without waiting for it to be developed in the sequel, whether there will be such a denial of the facts as to make an actual construction of the constitution and laws necessary.

Can there be any doubt that in this case the court is called upon to say whether the constitution and laws of the United States have not segregated Fortress Monroe from the state of Virginia; have not divested that territory of all state jurisdiction; whether the jurisdiction there, whether executive, legislative, or judicial, is not foreign to the state of Virginia; whether letters testamentary, issuing from a Virginia court, are competent to vest property fixed to the soil of Fortress Monroe, in a jurisdiction foreign to the state; whether, if property can be thus vested, it be by comity or how, and to what extent, and for what purpose; whether any court but this is competent to make an officer of the United States at Fortress Monroe a party to a suit concerning the Hygeia Hotel, so as to aid or advise or control him in the exercise of that discretion in passing title to a purchaser of the hotel at its judicial sale to which the deed to Mr. Phœbus empowers him to assent or not, at his discretion? It is apparent to me that the bill, and the exhibits accompanying it, do show that such questions as these and similar ones must ar'se in the conduct of this case, requiring a construction by the court of jurisdictional clauses of the constitution, and the effect of laws of congress relating to Fortress Monroe to any property fixed to its soil, and to the Hygeia Hotel especially. In point of fact, questions of this character have constituted the burden of the extended arguments that we have already had in this case, lasting through several days. Nor do I perceive how a state court could entertain and conduct a suit relating to the same matters which we are dealing with in this case, without passing upon questions of the character I have indicated,—questions which it has not been the policy of the United States to relegate from the federal to the state courts. It might result in pernicious consequences if this court, by its rulings on questions arising as those now before me have done, should establish a dual jurisdiction of courts over property at Fortress Monroe.

The supreme court of appeals of Virginia, in a spirit of generous comity towards the United States, has in the case of *Foley* v. *Shriver*, 10 Va. Law J. 419, in order to guard against such a state of things, declared that lands in that vicinity, ceded to the United States by Virginia, are no longer a part of the state of Virginia, and are not subject to the jurisdiction of the state courts. I am unwilling, by any decision of this court, to neutralize the effect of that decision by seeming to recognize the existence of two judicial jurisdictions at Fortress Monroe. Without, therefore, passing upon the question raised by the plea, whether the suit must abate by reason that some of the defendants are not citizens of the state of Virginia, or of any other state, I overrule it as insufficient, on the ground that the bill presents a case in which it will be necessary for this court to construe the constitution and certain laws of congress on questions arising thereunder.

Although I have thought it unnecessary to pass upon the question whether Mrs. Phœbus and her children, defendants in this suit, by residing at Fortress Monroe, were by that fact alone non-residents and not citizens of Virginia, yet I may as well say, *obiter*, that I do not think that such is the result of that residence. Fortress Monroe is not a part of

Virginia as to the right of the state to exercise any of the powers of government within its limits. It is *dehors* the state as to any such exercise of the rights of sovereignty there. It does not follow, however, from this immunity of the place from the state's rights of sovereignty, that inhabitants there, especially the widow and minor children of a deceased person, thereby lose their political character, and cease to be citizens of the state. Geographically, Fortress Monroe is just as much a part of Virginia as the grounds around the capital of the state at Richmond,— "Fortress Monroe, Virginia," is its postal designation. Can it be contended that, because a person who may have his domicile in the custom-house at Richmond, or in that at Norfolk, or at Alexandria, or in the federal space at Yorktown, on which the monument there is built, or in that in Westmoreland county, in which the stone in honor of Martha Washington is erected, loses by that fact his character of a citizen of Virginia? Would it not be a singular anomaly if such a residence within a federal jurisdiction should exempt such a person from suit in a federal court? Can it be supposed that the authors of the constitution of the United States, in using the term "citizens of different states," meant to provide that the residents of such small portions of states as should be acquired by the national government for special purposes, should lose their geographical and political identity with the people of the states embracing these places, and be exempt by the fact of residence on federal territory from suit in a federal court? I doubt if it would ever be held by the supreme court of the United States that the cession of jurisdiction over places in states for national uses, such as the constitution contemplates, necessarily disfranchised the residents of them, and left them without any political *status* at all. In the western territories of the United States, governments are provided on the very ground that no state authority exists. In the District of Columbia, a government is provided under the control of congress. In the territories and the federal district, a condition of things exists which excludes the theory of any reservation of rights to the inhabitants of the body politic to which they had before belonged. I see no reason for insisting that persons are cut off from membership of the political family to which they had belonged by the cession to the United States of sovereign jurisdiction and power over forts and arsenals in which they had resided.

I suggest these thoughts in the form of *quære*, and make what is said no part of the adjudication of the case. But see *U. S.* v. *Cornell*, 2 Mason, 60; *Com.* v. *Clary*, 8 Mass. 72; *Sinks* v. *Reese*, 19 Ohio St. 306; *Foley* v. *Shriver*, 10 Va. Law J. 419.

So ordered.