O'BRIEN et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

BROWN v. SAME.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. COMPROMISE—CONSIDERATION.

Actions were pending against a city on improvement contracts aggregating $8,000,000. The city had won one action, but plaintiffs claimed they could amend as to the others or bring new actions and establish claims exceeding $3,000,000, despite the decision in the first case. Many of the city's witnesses had died or gone beyond seas, and the outcome of the other cases was in doubt. The corporation counsel after several months of negotiation, and with the advice and approval of every city official connected with the controversy, and of the eminent special counsel employed by the city, compromised the claims, and offered judgment for $700,000. *Held*, that the settlement was based on a sufficient consideration.

2. SAME—POWER OF CITY TO MAKE.

The settlement by the corporation counsel, with the advice and approval of the corporate authorities, was valid.

McLaughlin and Patterson, JJ., dissenting.

Appeals from special term, New York county.

Actions by John O'Brien and Heman Clark, and by Walston H. Brown, as receiver, etc., of Brown, Howard & Co., against the mayor, aldermen, and commonalty of the city of New York. There were judgments for plaintiffs, and from an order denying a motion to set them aside (55 N. Y. Supp. 50) defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles Blandy, for appellants.
L. Laflin Kellogg, for respondents.

O'BRIEN, J. Judgments in these several actions were entered, amounting to $700,000, by the offer of the then corporation counsel after a series of negotiations looking to a settlement. This motion was made by the present corporation counsel, with the aid and concurrence of the present comptroller, to vacate the judgments upon the

ground that the then corporation counsel did not possess authority to offer judgments, which motion was denied.

The learned judge below correctly stated that "the decision of the motion depends upon three considerations: Was the settlement effected in good faith? Was it effected in exercise of competent authority? Was it supported by sufficient consideration?" It is conceded that in "this adjustment and in the carrying of it out all parties concerned were actuated by the best of good faith, and sincerely believed that the best interests of the city would be subserved in getting rid of these claims upon the basis of these offers." But it is said that to permit such a compromise would give the corporate authorities great powers, which are likely to be abused to the detriment of the municipality. The answer to this claim, as stated by the learned judge below in the case of Bush v. Coler, 24 Misc. Rep. 371, 53 N. Y. Supp. 682, is:

"Authority to compromise a claim against the city is liable undoubtedly to great abuse, and in its exercise by a careless or corrupt official might inflict severe loss upon the community. But all power is susceptible of prostitution, and the most that can be done to intercept the evil is by the selection of competent and faithful functionaries and by the condign punishment of delinquents. These safeguards against an incapable or dishonest corporation counsel the law abundantly provides."

And it may further be said that in the transaction of the business of a municipal corporation, just as in the administration of the affairs of a private corporation, there must be power delegated to some officers to act for the corporation. Although such authority may be abused, and the municipality suffer in consequence, the city is just as likely to be injured by a neglect to confide to some responsible officers authority to act in a particular case. Unless something is left to the judgment and discretion of officials, and the responsibility placed upon them to determine under what circumstances the power shall be used, it were idle to confer it. Here the zeal, integrity, and judgment of the corporate officials are not questioned, and their honesty and perfect good faith are not only conceded, but the expediency and wisdom of their action are not criticised. And it would be difficult to have a case in which the successive steps in the matter of settlement were taken with so much care and deliberation. The assent, approval, or acquiescence was first obtained of every municipal officer and department having to do with the subject or knowledge of the questions involved, or who were competent to aid the city in reaching a conclusion as to whether it was wise to make a compromise and for what amount. Extending over a period of months we have the correspondence of the different officials upon the subject of the expediency and the amount, and there is a final unanimity of sentiment in favor of a settlement on some just basis. And before the settlement was made there were resolutions of the aqueduct commissioners (of which the mayor and comptroller were ex officio members), based on the report of their chief engineer approving the terms of settlement, which, in addition, we find were recommended and advised by these able lawyers who were the special counsel of the city in charge of these litigations. In opposition to this array of men equipped with knowledge

of the facts and having the ability to advise what was for the best interests of the city, there is the suggestion or argument made that, however wise or expedient, there was no consideration for the settlement, because, in one of the actions brought, the contractors were unsuccessful; and therefore that, no legal liability having been established in that one action, the result in all the other actions, brought on different contracts and possibly under changed conditions, would be the same.

As correctly urged by the appellants, it is beyond the power of municipal officers to make a gift of the moneys or the property of the corporation; and if, upon the facts here appearing, this large amount of money was a mere gift, based on no consideration, the action taken could not, and should not, receive the sanction of the court. In support of the argument that the settlement lacked consideration, our attention is called to the fact that the court of appeals (139 N. Y. 544, 35 N. E. 323) in one of the several actions brought by these plaintiffs, all of which relate to different sections of the aqueduct, decided, as to section 6, in favor of the city. The court held in that case that upon the plans were lines designated by letters "limiting the cross section of the tunnel excavation," and that such lines were the true limit by which to measure the amount of excavation, and that the excavation claimed for, being outside of such lines, could not be allowed; and, secondly, that the action, so far as it sought to recover for extra cost, "was an action, under the contract, within the meaning of the Laws of 1883, c. 490; and therefore recovery for such extra cost was prohibited."

The respondents claim that on a trial as to the other sections they could show by additional plans and by the opinion of experts that the excavation claimed for was within the limiting lines, which, in section 6, were determined by the court without such aid and by mere inspection of the plans. And it appears that for some time prior to the final certificate given by the chief engineer, which, under the construction of the contract, was to be binding, payments were claimed in accordance with the construction given by the defendants to the contract; and that such payments for the excavation were allowed. The fact is not disputed that tunnel excavation actually done by the contractors, amounting to more than the judgments offered, was allowed by the engineer in charge of the work during its performance, although taken out of the final certificate as made up by the engineer on the completion of the work.

Although the appellants insist that the actions in reference to the other sections are for claims similar to the one involved in the action tried in reference to section 6, the respondents are equally as persistent in claiming that, as the amounts are based upon different contracts containing different provisions and concerning different portions of the work, a recovery could be had without disturbing the rules and principles laid down in that decision; and that the action on section 6 was based on the unreasonable refusal of a certificate, while the other claims are based on the right to recover by attacking the certificate as fraudulent. To clearly

57 N.Y.S.—66

show this distinction, a change was proposed in the pleadings, and a motion to be allowed to amend was made and denied; and an appeal therefrom is still pending. But, even though the city were successful on that motion, the issue would not be determined; for, as the statute of limitations has not yet run, new actions, upon the theory which the plaintiffs insist that the evidence would support, could be commenced. The various considerations and motives which actuated the city authorities were thus summarized in the affidavit of the corporation counsel:

"It was stated and claimed by the plaintiffs' attorney that he felt confident that he could recover in these actions against the city of New York a sum without interest amounting to between two and three million dollars upon a trial not in conflict with the rules laid down in the decision of the court of appeals in the action brought upon section 6. That, with that end in view, in the summer of 1896 steps were taken by the said attorney in one of the above-entitled actions to amend the complaint under which the final certificate of the chief engineer would be attacked as fraudulent, and a recovery had upon that theory for the work actually done but uncertified. This form of action, if said complaint had been so amended, would have been entirely different from the form of action under which the decision of the court of appeals, under section 6, was rendered. That, while the city was successful in the first instance in defeating the amendment, deponent feared that in the end the plaintiffs might be successful in securing the amendment, and, even if they did not, they would still be in a position to commence new actions upon the new basis; the time for commencing same not having expired. That deponent believed that, upon this new form of action and upon this new issue, a question might be presented for the jury upon which it would be necessary to call as witnesses for the city the engineers who had been employed by the city during the building of the aqueduct. That to deponent's knowledge some of the most important of these witnesses had died or gone to foreign lands, or for other reasons had become unavailable as witnesses for the city. If the trial of the actions still remaining untried should assume this phase, it was quite possible that such actions might be decided in favor of the plaintiffs, and a recovery had therein much larger than the amount settled for. In any event, the new situation made the matter of the city's ultimate success at least doubtful, and seemed to warrant a settlement. That it was also claimed by plaintiffs' attorney that all the plans of the work had not been before the court in the case on section 6, so that they could be properly examined and passed upon by the court, and that all the plans, when taken together, were susceptible of the construction sought to be put upon them by him as counsel for the plaintiffs. That all of these conditions, and especially the possibility of recovery in the new form of action, were taken into consideration by deponent, and formed a strong incentive to induce deponent to advise the making of a settlement in addition to the special grounds covered in the correspondence."

There was, therefore, an actual controversy in which the plaintiffs sought to recover for work actually done, and the outcome of which was considered doubtful. The cases cited in the court below and many referred to upon the argument establish the principle that a compromise of a doubtful claim is a good consideration for a promise to pay money; and, when an action is brought upon such a promise, it is no answer to show that the claim is not a valid one. Crans v. Hunter, 28 N. Y. 389, 394. It is insisted, however, by the appellants, that, while this rule should be recognized as applying to individuals, a different principle applies to municipal corporations; and to answer these objections and the further one that, under the facts here appearing, what was sought to be done was to make a gift without consideration, we cannot do

better than refer to the language of the court in Board v. Bowen, 4 Lans. 24, 32:

"It is claimed in behalf of the plaintiffs that what they undertook to do was to give away the corporate property, and that this was wholly beyond their power. But here was no 'gift,' in any just or proper sense of the term. It was a gift in the same sense that every party to a controversy gives when he relinquishes a portion of a claim he makes against his adversary to effect a settlement and avoid further litigation, and no other. It is a sacrifice of a portion of a claim which may never be fully sustained upon the altar of peace. Such settlements have always commended themselves to the favor of courts and of the law. What the plaintiffs did in this case was to throw off the interest and costs upon their claim in order to get rid of the defendants' appeal, and avoid the expense and delay of further litigation. * * * It is of no avail to say that the defendants could not have succeeded on their appeal in reversing the judgment. The court will never inquire in such cases whether the claim relinquished was in reality just or unjust. It is enough that it was disputed and relinquished in order to effect a settlement and end litigation."

This subject of a compromise by a municipal corporation is ably treated in the case of Prout v. Pittsfield Fire Dist., 154 Mass. 450, 28 N. E. 679, where many of the authorities are examined and reviewed, and where it was held that the plaintiff's claim, "whether on a final determination it might or might not be found to be valid, was sufficiently substantial to furnish a good consideration for the compromise."

The claims of these plaintiffs aggregated between $7,000,000 and $8,000,000, which, with several years of interest, amount to nearly, if not quite, $12,000,000 at the present time; and of this sum the plaintiffs' counsel expresses confidence of being able to secure, as the result of litigation, more than $3,000,000. Upon such a showing, coupled with the advice of eminent counsel specially charged with the litigation, and with the further fact appearing that many of the witnesses who secured the victory for the city upon the first trial had died, gone away, or were no longer available, can it be said that the action taken was without justification or authority, or so lacking in consideration that it was simply a gift of a large amount of the city's money? · In the letter of the special counsel upon the subject, they write:

"Under these circumstances, we are of the opinion that a full and final settlement of all the controversies relating to payments to be made by the city under the contracts for the construction of the new aqueduct, * * * provided the same should not substantially exceed the sum mentioned by you, would be to the best interest of the city; and, if you have good reasons to suppose that a proposition made by yourself would result in bringing about such a settlement, we are of the opinion that it is your duty to make one."

As the result, therefore, of the advice and approval of all those familiar with the subject and with the knowledge which the corporation counsel himself had gained as an aqueduct commissioner as to the merits of the claims of the contractors, he pursued the negotiations through many months, and finally secured the settlement. As the corporate authorities had reached a conclusion (in which we cannot say they erred) that a very considerable liability might be fixed upon the city if the settlement were not made, the

learned court below was right in refusing to set aside the judgments.

Order accordingly affirmed, with costs. All concur, except McLAUGHLIN and PATTERSON, JJ., dissenting.

McLAUGHLIN, J. (dissenting). I cannot agree with the other members of the court to affirm this order. The corporation counsel, in my opinion, had no authority to make the offer upon which the judgments were entered, and therefore his act is not binding on the city. All the power which the city has is specifically expressed in, or necessarily implied from, the charter; and the corporation counsel, the legal adviser of the city, has no power other than that derived from the city through the charter, and every act assumed to be done by him in excess of that power is void. The charter, in effect, at the time the offer was made (Consolidation Act), did not confer upon the corporation counsel either directly or impliedly the power to do what he did, and his act is not sustained by any precedent that I have been able to discover. An attorney acting for an individual cannot, in the absence of express authority, make a compromise for his client, or conclude him in relation to the subject-matter of an action (Barrett v. Railway Co., 45 N. Y. 635); he cannot satisfy a judgment without payment in full, and, if he does, the satisfaction will be set aside (Beers v. Hendrickson, Id. 665); and he cannot release his client's rights or subject him to a new obligation (Lewis v. Duane, 141 N. Y. 314, 36 N. E. 322). The corporation counsel has no larger powers, as such, to bind the city, than those connected with the ordinary relations of attorney and client. This is precisely what was held in People v. Mayor, etc., 11 Abb. Prac. 66. There judgment was rendered against the city of New York, and the corporation counsel, doing what he believed to be for the best interest of the city, stipulated not to appeal. Subsequently a motion was made to set aside the stipulation, and the court held that it would not inquire into the merits of the action by considering whether the opening of the judgment would result in gain or loss to the city; that the corporation counsel had no power to make the stipulation, and therefore the city had a legal right to have it vacated. In the course of the opinion delivered by Mr. Justice Ingraham, he said:

"It would be almost impossible to form a correct idea of the consequence if it were ever established that any head of a department had the power, without authority of the common council, to dispose of city rights and property either directly or indirectly; and if the head of the law department can at his pleasure make the corporation a party to suits, and when a large recovery is had against the city can stipulate that the city shall not have any means of review or redress, he would possess an absolute control over the city property far beyond that possessed even by the common council. It appears to me that he possesses no such power, and the stipulation was unauthorized, and cannot be sustained."

Here the corporation counsel had no power to make the offers, and the city has the legal right to have the judgments vacated, and it is no concern of the court whether it is for the best interest of the city or not. The court discharges its duty by determining the question according to the legal rights of the parties. The power to settle and

compromise these actions, if the power existed at all (which it is not necessary now to determine) after the claims had been presented to and rejected by the comptroller (McGinness v. Mayor, etc., 26 Hun, 142), was lodged in the common council. The actions are all based upon contracts, and before they were commenced the claims forming the basis of each were presented to and rejected by the comptroller; and, after such rejection, in the absence of some act of the common council, no other body or officer could obligate the city to pay the same or any part thereof. Section 74 of the consolidation act supports this view. That section, among other things, provides:

"No additional allowance beyond the legal claim which shall exist under any contract with the corporation or with any department or officer thereof, or for any services on its account or in its employment, shall ever be passed by the common council except by the unanimous vote thereof; and in all cases the provisions of any such contract shall determine the amount of any claim thereunder, or in connection therewith, against the said corporation or the value of such services."

But it is said, or such inference may fairly be drawn from the prevailing opinion, that the corporation counsel had power to do what he did, because his act was approved by the mayor, the special counsel, and the aqueduct commissioners, and that the comptroller, if he did not consent, at least did not object. There is no doubt but that the officers connected with the city government referred to, with the exception of the comptroller, deemed it wise and for the best interests of the city that the settlement should be made, and that they approved of the corporation counsel's act in making it. But I am unable to see that this has any effect upon the question of authority. The corporation counsel either had the power to make the offer, or else he did not. If he did not have the power under the charter, then I do not see how it can be held that the power could be conferred upon him by special counsel retained solely to defend the actions, or by the aqueduct commissioners, whose powers were specified and so limited by the act creating them that they could not obligate the city to pay any sum whatever for work done or materials furnished in the construction of the aqueduct not specified in the contracts which they were authorized to make, or by the mayor because he, ex officio a member of the aqueduct commission, happened to be present at the meeting when the resolution authorizing the settlement to be made was passed. The comptroller did not consent to the settlement, and it was not necessary for him to object to it in order to prevent the city being bound by it. The corporation counsel, as we have seen, had no authority, under the charter, to authorize the judgments to be entered, and something more than the facts which appear in the record must be shown before he could obligate the city to pay $700,-000. The settlement may have been a wise one, but that has nothing to do with the question of whether or not he had the power to make it. The fact remains that the act of the corporation counsel was unauthorized; and, the city having attacked it, as it had a legal right to do, the judgments should be vacated.

I am also of the opinion that the judgments should be vacated for want of consideration. The city is not an eleemosynary corporation.

It must be just, but it cannot be generous.   It must pay its obligations, but it cannot give its property away.   The claims involved in these actions, in the condition in which they were when the judgments were entered, could not be legally enforced against the city.   That had been decided by the court of appeals in O'Brien v. Mayor, etc., 139 N. Y. 453, 35 N. E. 323.   Comparison of the complaint in the O'Brien action with the complaints in these will show that a recovery was soughts in all the actions upon substantially the same grounds, and that a determination of one necessarily determined the rights of the parties in the others;   and it was so considered by the corporation counsel, by the special counsel, and by the plaintiffs themselves. These actions and the O'Brien action were all brought in 1891.   The O'Brien action was tried in June or July of that year, and from that time until after the determination by the court of appeals nothing further was done in any of these actions.   After the court of appeals had decided the O'Brien action in favor of the city, then the plaintiffs in these sought to secure some relief from the legislature, and, failing in that, applied in one of the actions to the court for leave to amend the complaint, so that the certificate of the engineer might be attacked as fraudulent.   The court, however, refused to allow the amendment, and the plaintiffs appealed; and thereafter the moving papers show that it was practically conceded by all the parties that a recovery could not be had, unless relief in some form could be obtained from the legislature, or the order refusing the amendment could be reversed.

The only consideration, therefore, for the judgments, was prospective or threatened legislation, once applied for and refused, or judicial action, once applied for and denied.   That this was the consideration clearly appears from the correspondence between the corporation counsel and the special counsel and the aqueduct commissioners.   In the letter of the corporation counsel to the special counsel, under date of November 25, 1896, he said:

"The decision already rendered in the one case which has been tried doubtless affords ample protection to the city so far as litigation is concerned, but offers no assurance against legislative attacks.   Last year, as you are aware, a bill was introduced in the legislature looking to the appointment of a commission to make awards upon these claims, and I am informed upon authority which appears to me to be worthy of credence that a similar attempt will be made during the forthcoming session.   I am very apprehensive that either this year or some other year such a measure will be passed, and I feel that, if it should, our chance of complete success before a commission would, for many and obvious reasons, be very remote.   *   *   *   As you are aware, I have always maintained the position as well since I have been counsel to the corporation as when I was a member of the aqueduct board that the contractors had already been paid upon their final estimates all that they were justly entitled to, and that the construction given to the contract   *   *   *   for tunnel excavation was the true legal construction; and this view has been sustained by the court of appeals."

To this letter, the special counsel, under date of December 3, 1896, replied:

"We have at all times been of the opinion, in which, while occupying a place on the board of aqueduct commissioners, you concurred, that in equity and justice none of the claims of the contractors which have been put in suit or upon which demands have been made are valid or should be acceded to."

And in a letter of the special counsel to the corporation counsel, under date of October 25, 1897, referring to the previous advice as to the advisability of a settlement, they said:

"We were not influenced in any considerable degree by any opinion or belief that the claims of the contractors had any foundation whatever in law, justice, or equity. Our advice was founded upon the possibility that the city might through the chances and changes of time lose the benefit of evidence now accessible to it, or that the legislature might be induced under the pressure of the contractors into some ill-advised measure of indulgence towards them. We regarded the decision of the court of appeals as a final determination, adverse to all the claims of the contractors, and that it would be equally applicable against any of such claims. * * * In giving our former advice, we assumed that there was some danger of such indulgence, notwithstanding the want of justice and equity in the claims. * * * It may reasonably be supposed that they selected what they supposed to be their strongest claims for active prosecution, but we do not regard this as a sufficient assurance against legislative intervention. * * *"

And in a letter of the corporation counsel to the special counsel, under date of November 17, 1897, he said:

"So far as any strictly legal claim is concerned, its nonexistence has been determined by the court of appeals; and, if the rule of stare decisis applied to the legislature as well as the courts, there would be no reason for making any compromise at all."

And in a letter to the aqueduct commissioners on the same date:

"As I have repeatedly said to the members of your board, so far as strict legal liability exists, it has been authoritatively settled by the court of appeals that there is none such on the part of the city. The only justification for settling at all, therefore, would be that, upon the whole, it were wise for the city, as it would be wise for any other litigant, to purchase peace by the payment of a sum which, while it is considerable in itself, is very much smaller than the aggregate of the claims which have been asserted."

The property of the city cannot be used to prevent hostile legislation, or to "purchase peace" by preventing the prosecution of claims which have no legal existence. I cannot conceive of a more dangerous precedent to the city than this one, if the order be affirmed, as it practically puts the disposition of the property of the city in the hands of the corporation counsel.

The order appealed from should be reversed, and the motion granted, with costs.

PATTERSON, J., concurs.