In the Matter of the Estate of CELIA SIDMAN, Deceased.

Surrogate's Court, Kings County, February 28, 1935.

*I. Gainsburg,* for Abraham Sidman.

*Delatour, Kennedy & Miller,* for Manie Sidman.

*Murray M. Halwer,* for Joseph Sidman and another.

*Stephen E. Ryan,* special guardian for Jerome Sidman.

WINGATE, S. The dearth of authority respecting the interpretation and effect of section 19 of the Decedent Estate Law authorizing and regulating the " compromise of controversies arising between claimants to property or estates where the interests of infants, incompetents or persons unknown or not in being are or may be affected," which is the subject-matter of the present proceeding, argues either the unfamiliarity of the bar with this enactment or the naturally speculative instinct of the average citizen.

Whereas this statute and its forerunners, section 24 of the Personal Property Law and section 73 of the Real Property Law, have been a part of the law of the State for over fifteen years, only seven reported decisions have been found in which it has been applied or considered, and this dearth of authoritative analysis renders the more interesting a consideration of its scope and effect.

That it is the policy of the law to compose controversies and avoid litigation is a principle familiar to all. In the usual case these *desiderata* are attainable only where the opponents are *sui juris.* (Cf. *Chauvet* v. *Ives,* 173 N. Y. 192.) It was obviously the object of the enactment under consideration to make like action possible in cases in which persons legally unable to contract, or who were not in being, were actually or potentially interested.

This difficulty, which the statute is designed to eliminate, is not, however, the only obstacle encountered in the effort to compose differences between persons actually or potentially interested in the acquisition of the property of a decedent. The wish of the departed must also be taken into consideration. It is one of the fundamentals of probate law that, subject to the inhibitions of positive rules of law, a competent person is entitled to make such disposition of his property after his death as he may see fit. The reiterations of this basic principle are literally legion. (*Matter of Watson,* 262 N. Y. 284, 293, 294; *Matter of Farkouh,* 134 Misc. 285, 286; *Matter of Shumway,* 138 id. 429, 433; *Matter of Kennedy,* 149 id. 188, 189; *Matter of Forte,* Id. 327, 328; *Matter of Loomis,* Id. 417.) There is, therefore, in every case in which an attempt is made to compromise the divergent claims of the living, to the assets of the estate, an unseen party in the person of the deceased, whose desires and intentions respecting the devolution of the property in question are entitled to protection. This task usually falls upon the court alone.

In these cases which concern only outright gifts to persons *sui juris*, this task is not onerous, since such a beneficiary receives the absolute *jus disponendi* of the subject-matter of the gift, and may patently do anything with it which may suit his fancy. Where, however, merely a life use is presently given or the rights of infants or unborns are involved, the obligation of the court in the preservation of the testamentary plan becomes more complicated and nice shades of distinction must frequently be encountered.

The statute under present consideration, in terms, concerns itself primarily with the compromise of controversies in which persons not *sui juris*, or not presently in existence, are actually or potentially involved, and grants concurrently to the Supreme and Surrogates' Courts the authority to act on their behalf under certain prescribed conditions and limitations.

Prior to the taking effect on September 1, 1934, of chapter 216 of the laws of that year embodying the latest amendment to the statute (Dec. Est. Law, § 19), an application for a compromise could be made in the Surrogate's Court only in a pending probate proceeding, but it may now be made in "any pending proceeding."

As was pointed out by Surrogate SLATER in *Matter of Bemis* (116 Misc. 516, 519), shortly after the insertion of the original sections in the Real and Personal Property Laws, the statute is silent "as to the process to be employed," the legislative intent being reasonably apparent to permit the courts to adapt their existing process to the exigencies of this new variety of jurisdiction. The language of subdivision (f) provides that application for approval of a compromise must be made by a verified petition which shall set forth (1) the provisions of any instruments or documents by virtue of which any claim is made to the property or estate in controversy; (2) any and all facts relating to the claims of the various parties to the controversy; (3) the possible contingent interests of persons not in being; and (4) all facts which make it proper or necessary that the proposed compromise be approved.

In practice it has been found advisable to require in addition that a copy of the proposed agreement executed by or on behalf of all persons presently or potentially affected by the proposed compromise, including special guardians, be attached to the petition. (*Matter of Field*, 115 Misc. 733, 734.) Such agreement should, of course, have incorporated therein a condition that it shall become effective only if and when approved by the court.

Presumably such an application would usually be made only in a proceeding to which all interested persons had previously been made parties, but if such chanced not to be the fact, jurisdiction over any absentees should be obtained either by the issuance and

service of citation or by the personal appearance of those in being in the manner outlined in *Matter of Bemis (supra)*.

The necessary parties to the compromise agreement are (1) the " executors, administrators or trustees;" (2) " all other parties in being who claim an interest in such estate " which, in a contested probate, will include all statutory distributees, legatees under any purported will and named executors who have not renounced; (3) a special guardian or special guardians for all persons not *sui juris* who are necessary parties; and (4) a special guardian or special guardians for (a) persons unknown, and (b) " persons not in being " whose " future contingent interests * * * are or may be affected by the compromise."

All of these necessary parties or their special guardians on their behalf must execute the " agreement of compromise made in writing."

Subdivision (f) further provides that " the court must make an order upon the application " after (1) " taking proof of the facts either before the court or by a referee;" (2) " hearing the parties and " (3) " examining into the matter."

The approval of the compromise agreement is expressly delegated to the judicial discretion of the court by the provision that it " *may* authorize " the fiduciaries thus " to adjust by compromise any controversy that may arise," it being further expressly stipulated that if such " agreement of compromise " be " found by the court to be just and reasonable in its effects upon the interests in said estate or property of infants, lunatics, persons of unsound mind, unknown persons or the future contingent interests of persons not in being," it " shall be valid and binding upon such interests as well as upon the interests of adult persons of sound mind."

The primary clue to the legislative intent respecting the manner of exercise of the judicial discretion reposed in the court in the approval or disapproval of any proposed compromise agreement, lies in the express grant of authority which permits it to authorize the fiduciary " to *adjust by compromise* any *controversy* " relating to the property of the estate.

To " adjust " familiarly connotes " to settle or bring to a satisfactory state, so that parties are agreed in the result." (*Flaherty* v. *Continental Ins. Co.*, 20 App. Div. 275, 277.)

The matter which may thus be adjusted or settled is a " controversy." While the meaning of this term, as " a dispute arising between two or more persons " (*Matthews* v. *Noble*, 25 Misc. 674, 675), is clear, it carries with it the further implication that such dispute must be " a real, unfeigned, actual contention " between the parties. (*Woodfin* v. *Phoebus*, 30 Fed. 289, 292.)

The principles of law respecting an agreement of compromise and settlement, and an accord and satisfaction, whereas separately classified in most legal digests, are, in this respect at least, identical. The consideration for the agreement in solution of the claim or demand in either case is the freeing of one or both of the parties from the threat or onus of litigation. The thought, therefore, lies at the root of the structure that such litigation is either actually in process, or is imminent. In both connections, therefore, it is essential to validity that the alleged dispute be not " wholly destitute of color or foundation or not made in good faith " (*Feeter* v. *Weber*, 78 N. Y. 334, 338), since in such event the basic consideration for the agreement would be wanting. (*Schuttinger* v. *Woodruff*, 259 N. Y. 212, 216; *Walmor, Inc.*, v. *Breger*, 237 App. Div. 614, 621; *Clark* v. *Standard Rock Asphalt Corp.*, 233 id. 536, 537.)

Consonant with this consideration, the uniform tenor of pertinent determination has stressed the *bona fides* attending the pressing of the claim (*Minehan* v. *Hill*, 144 App. Div. 854, 858; *O'Brien* v. *Mayor, etc., of City of New York*, 25 Misc. 219, 221; affd., 40 App. Div. 331; affd., 160 N. Y. 691; *Matter of Kilgannon*, FOLEY, S., 146 Misc. 600, 601), but further than this, the " controversy " should present a dispute the outcome of which might reasonably be deemed doubtful. (*Dolcher* v. *Fry*, 37 Barb. 152, 157; *Russell* v. *Cook*, 3 Hill, 504, 506; *Guggenheim* v. *Guggenheim*, 168 N. Y. Supp. 209, 210, not otherwise reported.) As is said by the court in the first cited case: " The court will not look behind a compromise, or inquire where the right is, but they must see that there was a dispute and some doubt, an injury done, or a question as to the liability to answer for it, or the like. Otherwise it is merely extortion, and not a compromise."

To this may be added that when the question at issue concerns the validity of a will or the method of devolution of property thereunder, it is especially obligatory upon the court to see to it that the dispute which is advanced as a basis for modifying or thwarting the testamentary wish affords a tangible possibility for the attainment of diverse results. This thought is ably developed by Surrogate GRANT in *Matter of Wadsworth* (142 Misc. 717, 723; affd., 236 App. Div. 712) in which he says: " The intent and purpose of the statute, it seems to me, is not primarily to defeat the expressed direction of a decedent as to the disposition to be made of his property because his relatives are dissatisfied with the disposition thereof made by him, but rather to provide a means of compromising and settling real and *bona fide* difficulties and differences and disputes and controversies existing or arising between different interests concerning which *bona fide* and extended litigation is

pending or threatened. The statute is founded upon common sense and, in support of public policy, favors the avoidance of litigation, but does not, I believe, favor the defeat of a testator's disposition of his property and his intent in relation thereto except for real and substantial reasons. If it were otherwise the making of a will would be an empty and useless formality. No testator could have any assurance that he would have anything whatever to say as to what should be done with his property or to whom it should go. All wills would then in the last. analysis be subject to reduction to the common formula — I leave all of my property to such disposition as my distributees shall see fit to make of it — subject only to the approval of the surrogate. The desires and intents of the distributees would be substituted for the desire and intent of the testator and would be controlling, subject always to the approval of the surrogate. The intent of the testator would become of little or no importance. This statute it seems to me has no such intent or purpose."

The final word of importance in the consideration of the legislative grant of authority in this connection is " compromise." The only adjustment which the court may approve is an agreement of this nature. The meaning universally attributed to this term is an " ' adjustment of matters in dispute, *by mutual concession,* without resort to law.' " (*Matthews* v. *Matthews,* 49 Me. 586, 587, italics not in original.) (Bouvier Law Dict. p. 574.) (See, also, *Armstrong* v. *Polakavetz,* 191 N. C. 731; 133 S. E. 16, 17; *Evans* v. *Irby,* 100 Okla. 60; 227 P. 433, 435; *Isaacs* v. *Wishnick,* 136 Minn. 317; 162 N. W. 297; *Barbarich* v. *Chicago, M., St. P. & P. R. Co.,* 92 Mont. 1; 9 P. [2d] 797, 799; *Scott* v. *Scott,* 131 Okla. 144; 268 P. 245, 248; *Hutson* v. *McConnell,* 139 Okla. 240; 281 P. 760, 763; *Owens* v. *Lynch,* 147 Okla. 298; 297 P. 223, 227; *Brecht* v. *Hammons,* 35 Ariz. 383; 278 P. 381, 383; *Dolan Mercantile Co.* v. *Wholesale Grocery Subscribers,* 131 Kan. 374; 291 P. 935, 943.) As the thought is succinctly phrased by LINDLEY, L. J., in *Mercantile Inv. & Gen. Trust Co.* v. *International Co.* (L. R. [1893] 1 Ch. 484, 489): "A power to compromise does not include a power to make presents."

As the court reads the opinion of the Court of Appeals in *Fisher* v. *Fisher* (253 N. Y. 260), it is to this phase of the question alone that its observations are addressed. Where, under a will, a person, whether adult, infant, unknown or unborn, receives a tangible right of interest, the absolute elimination of such right or interest without any compensating advantage is not a compromise — it is a complete surrender, a making of a present — and such an act is beyond the deputed power of the court. So long as there is a possibility that any such person may have a right, however remote or

contingent, the court possesses no authority to validate an agreement which totally nullifies it, for the reason that no such power has been accorded. Living persons who are *sui juris* may make gifts of their interests if such action suits their humor, others may not, and the court, as the protector of the interests of the latter, may not do it for them.

The remaining decisions which have referred to the section here discussed may be briefly noted. *Matter of Tinker* (244 N. Y. 51) adds nothing to this review, being concerned merely with the interpretation of an agreement of compromise previously effected. *Matter of Kraetzer* (147 Misc. 609) affirms only the familiar principle that Surrogates' Courts have no jurisdiction over *inter vivos* trusts and that in consequence a compromise involving such an instrument is not within its grant of power. *Matter of Watson* (124 Misc. 216) presents an interesting analysis of the considerations inducing the court to approve a compromise on a contested probate and is in complete harmony with the views hereinbefore expressed.

In the case at bar the compromise primarily concerns the rights of one of testatrix's sons, Abraham, under the "fourth" item of the will. Testatrix therein purports to devise her realty to two other children upon condition that fifty dollars weekly be paid from the rents and profits thereof up to the time of its sale. When it is sold, the proceeds are to be divided equally between the two devisees and Abraham. The weekly payments are to be made to Abraham, so long as he shall live, and on his death to "his child or children, in equal parts." Decedent's husband has elected to take against the will, and his right so to do has been upheld by this court in the present proceeding (*Matter of Sidman*, 153 Misc. 735) after a protracted and unusually unsavory trial. The proposed compromise agreement, a copy of which is attached to the petition, contemplates the release of all of Abraham's interests under the will in return for a cash payment of $15,750, of which $1,000 is to be set apart for his son, Jerome, who is his only presently living child.

The petition is defective by reason of its failure to contain appropriate allegations respecting the possible contingent interests of persons not in being. It is patent from the terms of the will noted that if Abraham shall in future have any additional children, their rights would be identical with those of his present son, Jerome. In accordance with the express direction of subdivision (d) of section 19, the court has accordingly appointed Vito F. Lanza as special guardian to protect their interests. (N. Y. L. J. Feb. 26, 1935, p. 1004.)

In view of this situation an amended petition is necessary, which, if prepared, should be served on all parties to the proposed compromise, including both special guardians.

The agreement presently submitted is also faulty in view of its failure to include the infant and persons unborn as parties.

Upon the filing and approval as to form of a new petition and agreement, a direction will be made respecting bringing the matter on for hearing.

Proceed accordingly.