In the Matter of the Estate of DORA GOLDMAN, Deceased.

Surrogate's Court, Kings County, February 26, 1932.

*Alvin R. Cowan*, for the petitioner.

*Singer & Gangel* [*Coleman Gangel* of counsel], for the contestant.

WINGATE, S. The decedent died on September 5, 1925, her will being admitted to probate on the twentieth of the following October. Aside from certain jewelry, specifically bequeathed, and premises 152 Hart street, Brooklyn, N. Y., devised to her husband, substantially the only asset of the estate consisted of a house at 181 Stuyvesant avenue, Brooklyn, N. Y., the equity in which, at the time of the death, was approximately $6,700.

The will directed a conversion of this realty by the executors, who were decedent's son and son-in-law, the erection of a trust with a principal of $6,000 for decedent' daughter, Emma Rubin, for life with remainders over to the other children of the decedent and the division of any residue of the estate equally.

Emma Rubin, the objecting party, is apparently about fifty years of age and, although married, is separated from her husband.

Shortly after the decedent's death, a family conference was held at which her husband, Samuel Goldman, her five children, her son-in-law and an old family friend were present.

The testimony regarding the occurrences at this meeting is somewhat conflicting, but the evidence of all except the objecting party is to the effect that it was then arranged with the consent of all, including Emma, that the Stuyvesant avenue house should be rented by the father, and the proceeds therefrom, after deducting

expenses for upkeep, maintenance and necessary improvements and repairs, should be applied by him for his support and that of the objecting daughter, Emma.

Although the latter's testimony in some respects slightly contradicted that of the other six witnesses, the court is fully satisfied of the truthfulness of the accountants' witnesses and determines as a question of fact, in so far as a conflict existed, that the occurrences at that time were as above stated.

It is not contradicted that from that time up to June, 1931, Emma resided in the Hart street house with her father, and that he paid all of the expenses of the establishment, and that he purchased her clothes and gave her spending money. Whereas, she undoubtedly performed a considerable portion, if not all, of the usual household duties, it was fully developed on cross-examination that this did not make any inordinate inroads upon her time and that she was able to devote a large portion of it to her personal amusement. The net proceeds from the Stuyvesant avenue house were unquestionably used for the support of the father and daughter.

While the mandatory power of sale in the will unquestionably effected an equitable conversion, the time for its execution was to a certain extent at least within the sound discretion of the executors. (*Matter of Varet*, 181 App. Div. 446, 449; affd., 224 N. Y. 573.) Were an objection on this score interposed and an issue raised, it might well be that a duty of explanation would be imposed on the executors in view of the long delay which has occurred. It seems apparent, however, that they have failed to sell as a result of the assent of the *cestui que* trust to the arrangement for retention and management, which would, no doubt, estop her in this respect as long as the agreement continued in effect and the income of the property applied to her use or in accordance with her direction.

The contention of the *cestui que* trust is, in effect, that such application was not made. This, however, is contrary to the overwhelming weight of credible evidence on the hearing. Being a married woman of mature years, in receipt of alimony from her husband, no obligations for her support rested upon her father. The natural rate of return of the $6,000 trust, if it had been erected, would have been only five per cent, or a total of $300 a year, and it is entirely obvious, even taking into consideration the services which she rendered to the joint household, that her support and maintenance, including free rent in the Hart street house, were worth far in excess of this sum. Even though it were to be granted, which, however, is apparently not the case, that a portion of her accruing income was used for the support of her father pursuant to her verbal agreement at the conference succeeding her mother's

death, this would not amount to a violation of the provisions of section 15 of the Personal Property Law (as amd. by Laws of 1911, chap. 327) as contended by her. It is entirely true that under this section a beneficiary cannot make an agreement binding upon her, alienating future income, and that is all which the cases cited on her behalf determine. It is entirely possible for a beneficiary to make a valid assignment of accrued income, and it is also possible to make a direction for payment of income as it accrues, with the limitation that this is subject to revocation by the beneficiary at any time in respect to payments not made prior to such revocation.

In so far, however, as such payments have been made pursuant to such an authority, they are protected and the payer or his agent, as in the case at bar, will not be obliged to make them again. (*Matter of Oakley*, 116 Misc. 494, 496, and cases cited; affd., 207 App. Div. 811.)

The effect of the agreement of October, 1925, made by the objecting party, was a revocable direction by her to pay the income to which she was entitled under the trust to her father, as her attorney in fact, for the purpose of assisting in the defraying of her living expenses.

When in June, 1931, she terminated this joint living arrangement, this action on her part amounted, in effect, to a cancellation of this authorization in respect to all future payments. As a result, beginning with the month of July, 1931, she became individually entitled to receive the income of the trust at the rate of twenty-five dollars per month, which sum should now be paid her by the executors.

No further objections having been interposed to the account, it is approved except as hereinbefore stated.

Proceed accordingly.