In the Matter of the Estate of MORRIS PERLMUTTER, Deceased.

Surrogate's Court, Kings County, September 9, 1935.

*Tomlinson, Herrick, Hoppin & Thorne* [*Harold B. Thorne, Jr.,* of counsel], for the executors.

*Peyser & Harris* [*Homer I. Harris* of counsel], for Ida Perlmutter and others.

*Stoller & Stoiler*, for May Bachrach, objectant.

*Herman Goldberg*, for Charles I. Rosenblum, as general guardian of Elaine H. Rosenblum and another, infants, and administrator, etc., of Hannah Rosenblum.

*Oscar A. Lewis*, special guardian for Marcia Lowenkron and others, infants.

WINGATE, S. Two main questions of testamentary interpretation are submitted for determination in this proceeding, and, dependent upon the decision of one of these, there is potentially presented the question of the effect of an agreement purporting to dispose of portions of the estate in a manner differing from that provided in the will.

The testamentary document in question, which was drawn by an attorney, was dated on June 7, 1932, approximately seven months

prior to testator's death. The net estate as reflected by the account totals about $110,000 prior to deduction of commissions.

The testator was survived by his widow and nine children, all adults, one of whom, Hannah Rosenblum, died shortly after his death. Six of these children have children, who are now infants.

The decedent and his widow were married in or about the year 1902 and resided at 554 Madison street, Brooklyn, for sixteen years prior to his death.

Except for two charitable bequests aggregating $700, the entire estate is erected into two trusts, both terminating on the attainment of the age of thirty years by the daughter Leona, or her prior death. The directed corpus of the first trust is one-third of testator's entire estate "both real and personal," while that of the second is the remaining two-thirds.

The provisions respecting the latter, which are the subject of the most spirited portion of the present controversy, read as follows: " During the pendency of the said trust, my trustees shall pay the * * * income * * * thereof to my following children: Abe, Isadore, Hannah, Selma and Leona, in equal shares. Upon the death of my daughter Leona, or should she survive, upon her attaining the age of thirty (30) years, the said trust shall terminate and my trustees shall divide the principal of the said trust in the following manner: to my son Samuel five (5) per cent, to my daughter Rae Cohen three (3) per cent, to my daughter Eva Labe one (1) per cent and to my daughter May Bachrach five (5) per cent, and the balance equally among my surviving children, *per stirpes* and not *per capita.*"

It is obvious, and indeed not the subject of present controversy, that the income during the continuance of the trust is payable, absolutely, to the five named children in equal parts. They have a vested estate therein, which in the case of Hannah has passed to her estate by reason of her death prior to the termination of the trust period.

The real controversy centers upon the manner of distribution of the principal fund upon the death of Leona or her attainment of the age of thirty years, whichever event shall first occur. The contentions of the parties respecting the nature of the remainder interests created run the entire gamut from absolutely vested, through contingently vested, to absolutely contingent. (Cf. *Matter of Terwilligar*, 135 Misc. 170, 184, 185; affd., 230 App. Div. 763.)

In the appraisal of the rights created, a distinction must be drawn between the fourteen per cent of the remainder expressly given to Samuel, Rae, Eva and May and the remaining eighty-six per cent. The former gifts are unquestionably vested, being bequests to the

several designees *nominatim.* (*Matter of Soy*, 143 Misc. 217, 220, 221, and authorities cited.)

The real question at issue, therefore, concerns merely the final eighty-six per cent of the corpus which, upon the termination of the trust term, the trustees are directed to " divide  *  *  *  equally among my surviving children, *per stirpes* and not *per capita.*" Even though it be admitted that words of survivorship are usually to be held to apply to survivorship of the testator (*Matter of Moores*, 155 Misc. 471, 473, 474), yet it is apparent that to give them that effect in the present instance would be to countenance an absurdity. There are no words of present gift of any portion of this part of the remainder, the language, in effect, directing that when the trust shall have terminated by reason of the occurrence of either of the alternate contingencies " my trustees shall divide the principal " to the extent of eighty-six per cent " equally among my surviving children, *per stirpes* and not *per capita.*" This is clearly a gift to a class within the recognized definition, the benefits of which vest in those who answer the description and are capable of taking at the time of distribution. (*Matter of Nebe*, 155 Misc. 392, 394, and authorities cited.)

The question is raised by certain parties as to the identity of those who will be entitled to take when the time of distribution shall arrive, it being urged that the persons to whom the first fourteen per cent of the remainder is given *nominatim* are to be excluded from participation in the remaining eighty-six per cent. To attain such a result, it would be necessary to substitute the word '' other " for " surviving," in the division directed " among my surviving children."

No justification appears for any such substitution. The sense is complete and fully comprehensible by leaving the will as it stands, and since it was admittedly drawn by an attorney, it is incumbent upon the court to give to the words used their usual and accepted meaning. (*Matter of Corlies*, 150 Misc. 596, 598; affd., 242 App. Div. 703.) It follows that, so far as this phase of the discussion is concerned, the four named recipients of the fourteen per cent of the remainder are entitled to share *pari passu* with the others in the distribution of the remaining eighty-six per cent.

The final question in this connection concerns the division which is to take place in the event that any of testator's children shall predecease the time when the performance of this act is directed. In this contingency, his share is payable to the then living descendants of his branch of the family, " *per stirpes* and not *per capita*," the quoted words implying a substitutionary gift. (*Matter of Mathews*, 154 Misc. 779, 781.)

The composite result of the foregoing is that the remainder interest in the first fourteen per cent is vested in the named individuals, whereas the recipients of the remaining eighty-six per cent can be determined only when the trust term has ended. If all of testator's children are then living, they will be entitled to receive distribution thereof *pro rata*. If any have died in the interval, leaving childr n, the latter will be entitled to receive their respective parent's shan.

It is apparent from the foregoing, therefore, that the purported compromise agreement executed prior to the probate of the will without the sanction of the court, can have no effect upon the contingent interests of the infant parties and that the objection of their special guardian thereto must be sustained. They were not parties thereto and no provision was made for the protection of their interests. (*Matter of Sidman*, 154 Misc. 675, 677, 678; *Matter of Jefferies*, 155 id. 464, 466.)

Beyond this, however, no circumstances furnishing any basis for a contest have been called to the attention of the court, for which reason, on basic principles, approval of the attempted subversion of the expressed testamentary wishes may not be granted. (*Matter of Sidman*, 154 Misc. 675, 679.)

The so-called compromise agreement purports to assign both income and principal to named individuals in stated amounts. In view of the provisions of section 15 of the Personal Property Law, these purported assignments of income amount merely to revocable authorizations to the trustee to make the payments designated. (*Matter of Goldman*, 142 Misc. 790, 793; *Matter of Lynch*, 151 id. 549, 551.)

The assignment of the remainder interests stand, however, on a different footing, and may be enforcible (*Matter of McGeehin*, 134 Misc. 334, 338; *Matter of Pastore*, 155 id. 247, 254), provided, when the time for payment arrives, the interests of the respective assignors have not become the property of their children by reason of their deaths and the substitutionary gifts over.

The foregoing disposes of all questions respecting the second trust with the exception of the issues of fact raised by the answer of Mae Bachrach who attacks the validity of the purported compromise agreement on grounds of mistake and lack of consideration. These must, obviously, be set down for hearing in usual course.

The sole remaining question for determination concerns the terms of the trust of which the widow is the life tenant. After the direction that one-third of the remainder of his estate " both real and personal " be erected into a trust with the income thereof payable to the widow, the testator provided: " I further direct that my trustees shall include in the one-third (1/3) int r t of my estate

hereinbefore described * * * the house that I own at 554 Madison Street, Brooklyn, New York, together with all the furnishings therein. I further direct that my wife may, if she should so desire, occupy the said house free from any obligation to pay any rent for same."

The house in question was the family residence, and it is the contention of the widow that she is entitled to occupy it not only without any payment of rental but also without payment of taxes or other ordinary maintenance charges.

This trust, like its fellow, is to terminate when testator's daughter Leona attains the age of thirty or dies. If the widow is then alive and has not remarried, the principal is to go to her outright.

The obligation from which the will professes to exonerate the widow is " to pay any rent." " Rent, or render, reditus, signifies a compensation, or return: it being in the nature of an acknowledgment or recompense given for the possession of some corporeal inheritance." (*Van Wicklen* v. *Paulson*, 14 Barb. 654, 655.) " A rent is said to be a sum of money, or other consideration, issuing yearly out of lands and tenements." (*Parsell* v. *Stryker*, 41 N. Y. 480, 483.) " Technically, rent is something which a tenant renders out of the profits of the land which he enjoys." (*Otis* v. *Conway*, 114 N. Y. 13, 16.) The Standard Dictionary defines " rent " as " The compensation or return of value given at stated times for the possession of lands and tenements corporeal." It appears obvious from these well-established definitions of " rent " that all which testator's language signified was that the widow should be permitted the use and occupation of this portion of the trust property of which, like all other portions, the trustees were to hold legal title without making any recompense to them for the possession thereof, if she should desire to occupy it. This, however, in no way alters the basic obligation of the trustees to pay the taxes and other ordinary maintenance charges of this and any other property in their hands, out of the income which may come to them in that capacity. (*Matter of Shepard*, 136 Misc. 218, 219; *Matter of Boyle*, 140 id. 523, 526 *et seq.*) In effect, the testator merely authorized the widow's personal use of this portion of the trust principal without the necessity for formal payment of rental therefor by her, which, after deduction of commissions, would be returned to her as income. That this was all which was intended seems obvious from the fact that no other funds for the payment of maintenance charges on this property were made available, and no unequivocal direction, as required by the authorities, authorizes the charge of the maintenance expenses against principal.

The final question submitted concerns the present right of the estate of the deceased daughter to receive the income to which it

has an unquestionable vested right. No intimation has been advanced to the effect that Hannah and her estate are not absolutely, in every contingency, entitled to receive twenty per cent of the net income of the second trust for the period of its duration. Thirty-one months have elapsed since the grant of letters testamentary and the court is unable to perceive any valid reason why the payment of the *pro rata* sum earned should not now be made. It should be possible for the parties to agree on the sum which may presently be turned over after reservation for any necessary disbursements and this sum should be paid promptly. In the event that agreement is found impossible, the matter may be set down for hearing or submitted on an agreed statement of facts and the court will itself make a concrete direction.

Proceed accordingly.