In the Matter of the Construction of the Will of ALFRED M. LANE, Deceased.

Surrogate's Court, Tioga County, February 5, 1953.

*Lester R. Mosher* for Kalurah Temple, petitioner.

*Lewis B. Parmerton* for James S. Truman, as executor of Alfred M. Lane, deceased.

CLOHESSY, S. This is a proceeding for construction of will instituted by the residuary legatee. The executor was cited and appeared.

Decedent died a resident of Tioga County on September 7, 1950. His last will and testament was dated January 17, 1949, and admitted to probate by decree of this court on October 7, 1950.

In the first, second, third and fourth paragraphs thereof gifts of money are made to named persons and organizations. The fifth paragraph reads as follows: "I give, devise and bequeath all the rest, residue and remainder of my property, of every kind, nature and description to Kalurah Temple of Binghamton, N. Y., to be used and expended by said Kalurah Temple for the benefit of crippled children and which bequest is to include any lapsed legacies which may become a part of my residuary estate."

Three questions of testamentary interpretation are submitted for determination as follows: First, does this legacy create a trust with Kalurah Temple as trustee, or is it an absolute gift to the temple? Second, in the event that this legacy is held to constitute a trust, can the income, or any portion of the principal, be used for any charitable purpose other than for the benefit of crippled children? Third, what is meant by the words " crippled children "?

The will was drawn by an attorney and construction is therefore strict (*Matter of Meyer,* 162 Misc. 426). The intention of the draftsman is necessarily imputed to the testator (*Matter of Corlies,* 150 Misc. 596, affd. 242 App. Div. 703). The presumption is that he used words and language which the testator desired, understood and approved (*Matter of Harley,* 51 N. Y. S. 2d 168). The court should give to the words used their ordinary (*Matter of Cashin,* 182 Misc. 1), usual and accepted meaning (*Matter of Perlmutter,* 156 Misc. 571).

A reading of the will in its entirety reveals no clue to the intention of the testator, other than as expressed in the paragraph above quoted. In connection with the first and second questions the testator provided in these words: " I give, devise and bequeath   *   *   *   to Kalurah Temple ".

This clearly is a gift, as distinguished from a trust, and within the rule laid down in *Matter of Lister* (161 Misc. 734), to the effect that where the testator makes a gift to a charitable society, stating his purpose, it is presumed that he intended a gift to the beneficiary and not a trust.

The subsequent provision " to be used and expended by said Kalurah Temple for the benefit of crippled children " is couched in language which makes it equally as strong as the first and compliance therewith is made mandatory. Jessup-Redfield, Surrogate's Law and Practice (Vol. 3, § 2834), states the rule that when the charity takes the gift, it then places itself in a fiduciary relationship which requires it to carry out the testator's expressed purposes.

What did the testator intend and mean in the naked expression " crippled children "? Other than those two words the will does not give any intimation. No decision or ruling has been found which defines or gives the meaning of the expression. No definition appears in State or Federal statutes. Resort, therefore, must be had to what is considered the usual, ordinary and accepted meaning.

The word " child " may be defined from many different viewpoints.  In the matter of family relationship it means one thing while for other purposes there are various meanings.  For their own peculiar use the Children's Court Act and Social Welfare Law define a child as a person less than sixteen years of age.  Subdivision 7 of section 2 of the Children's Court Act defines a physically handicapped child as a person under twenty-one years of age.

This latter age limit seems to be favored and universally recognized, particularly in matters involving a distinction by years between manhood or womanhood and childhood.  One upon attaining twenty-one years is commonly said to have become of age.  The word " child " for application other than in family relationships and certain special statutes is considered generally, and for the purposes of this proceeding is defined, as being a person under twenty-one years of age.

Three court decisions have been found construing the word " cripple ".  These tend to confine the meaning to a limb.  In *Baker* v. *Chicago, B. & Q. R.R. Co.* (327 Mo. 986), it was said that the word " crippling " is equivalent of words " physical disability " and is defined as to deprive of use of limbs, particularly of leg or foot, to deprive of strength, activity or capability for service or use, and to disable.

*Commonwealth* v. *Farrell* (322 Mass. 606), held that the word " crippled " means to deprive of the use of a limb, particularly of a leg or foot, to lame, to deprive of strength, activity or capability for service.

*People* v. *Lockwood* (308 Mich. 618), declared that a person totally disabled for four months because of inability to use one arm following comminuted fracture of outer third of collar bone was " crippled ".

According to Webster's New International Dictionary, the noun " cripple " in Middle English was spelled *cripel, crepel,* and *crupel*; in Anglo-Saxon, *crypel,* which is akin to the Dutch *kreupele* and the German *krypel,* and meaning, properly, one that cannot walk, but must creep, from the Anglo-Saxon " *creopan* ", to creep.

From these comes the meaning as being one who creeps, halts or limps; one who has lost, or who never has had, the use of a limb or limbs; a lame person; hence, one who is partially disabled.  Apparently the verb " cripple " was derived from the noun.

Webster gives two distinct meanings. In what may be designated the narrow meaning, the verb means to deprive of the use of a limb, particularly of the use of a leg or foot; to lame. In the broad meaning it means to deprive of strength, activity, or capability for service or use; to disable. Noticeable is the fact that two of the court decisions above referred to appear to have confined and used the two meanings for the single purpose and application.

One may safely accept either meaning and keep within the above rules of construction. The narrow meaning still remains but may not be retained or adopted by all persons. Usage and acts and speech of people seem to sanction and urge the adoption of the broad meaning.

There is a general tendency to apply the word '' crippled '' to parts of the human body other than and in addition to a limb. One frequently hears the expression concerning the crippling effect upon the heart, or the back, or the muscle.

In the minds of many persons the verb '' cripple '' when applied to children in the expression '' crippled children '' is synonymous with disabled, physically handicapped and deformed. The words '' crippling '' and '' crippled '' are used very broadly. The meaning of words is constantly being enlarged.

From the medical, specialist, and organized effort viewpoint, as well as governmental and voluntary programs, comes much enlightenment and guidance. A. J. Altmeyer, Commissioner, Social Security Administration, states that the Social Security Act in section 511 (U. S. Code, tit. 42, §§ 711–715, captioned *Services for Crippled Children*) provides for an appropriation for the purpose of enabling each State to extend and improve services for children who are crippled or who are suffering from conditions which lead to crippling.

The Act does not define crippling. This is left to the State crippled children's agencies. The children's bureau, which administers title V, has interpreted (Code of Fed. Reg., Cum. Supp., tit. 42, § 200.1, subd. [j]) the term crippled children to mean '' Those children below the age of 21, who are handicapped or suffering from conditions which may lead to being handicapped under the definition adopted by the State agency ''. The State plan, therefore, includes the State's definition of a crippled child, either legal or administrative.

Joseph J. Endres, Chief, Bureau for Handicapped Children, State Education Department, observes that in this State no

specific attempt has been made to define a crippled child; rather a physically handicapped child is the legal definition. It is significant that the two major departments dealing with handicapped children, namely, the State Health Department and the State Education Department, wherein both the Children's Bureau and the Vocational Rehabilitation Bureau have in effect the same definition.

He states that " the general usage in terms of a crippled child is—it is one where all the skeletal muscles and structures are involved and further and at present many agencies are interpreting the equivalent to ' crippled ' as a situation where the impairment is in such things as eyes, ears, speech, hearing and other major organs of the body."

Herman E. Hilleboe, M.D., Commissioner, Department of Health, State of New York, in a letter to the court makes this statement: " We consider a ' crippled child ' as synonymous with ' a physically handicapped child ', and   *   *   *   both the Children's Court Act and the Public Health Law define a handicapped child as ' a person under twenty-one years of age (with) a physical defect or infirmity, whether congenital or acquired by accident, injury, or disease '. For the administration of our medical rehabilitation program, a defect or infirmity is defined as a structural abnormality which interferes with or has a strong potentiality of interfering with the patient's ability to meet the routine demands of self-care, to obtain an education, or to earn a living. My purpose in elaborating these definitions is to emphasize the comprehensive way in which we feel the whole problem should be interpreted. A crippling defect should not be considered as one confined to the limbs, or even to other parts of the bony structure. A person with an abnormality of the heart structure, for example, may appear normal to a casual observer, yet he may be much more seriously crippled, in terms of living, learning, and earning, than a neighbor with a visibly and markedly shortened limb. The examples are legion, but in general we can say that a serious defect anywhere in the body may appropriately be considered a crippling defect ".

Garry deN. Hough, Jr., M.D., Chief Surgeon, Shriners Hospitals for Crippled Children, Springfield, Massachusetts, in a personal and not in an official capacity, states he is " in accord that the definition of crippled child " as one with some defect or impairment of a limb, viz., a leg or arm is much too narrow for ordinary usage and has been greatly extended. This is sometimes modified by the addition of an adjective such as

" oral cripple " including the congenital deformity of the mouth and pharynx; and " cardiac cripple ", an individual in whom impairment of the heart interferes with general function.

Simon Stickgold, senior research analyst, The National Society for Crippled Children and Adults, Inc., sizes up the situation as follows: " A great deal has been written on this subject and many attempts have been made to define these terms. They have varied from time to time and from place to place. The tendency some years ago was to consider these terms as covering all crippling and related conditions such as epilepsy, rheumatic heart disease, mental disability, facial burns and other disfiguring conditions. In some areas and for some purposes these are still considered to be crippling conditions. However, more recently, a tendency has developed in private welfare agencies serving the crippled to restrict the term to children suffering from orthopedic and plastic handicaps which would include children with cleft palates. For the purposes of the National Society for Crippled Children and Adults, a crippled child or adult is an individual who by birth, illness or injury is deprived of the usual functions of his neuromuscular and associated skeletal systems. Typical examples of crippling included in this definition are those due to infection; those due to developmental defect or injury before, during or after birth; those due to trauma; those due to pathological bone conditions or developmental diseases; and congenital orthopedic anomalies. It may be well to point out that public agencies, in recent years, appear to be expanding their conception of what is a crippled child."

Howard A. Rusk, M.D., professor and chairman, Department of Physical Medicine and Rehabilitation, New York University College of Medicine, gives a clear picture in these words: " In contrast to the former limited use of the term ' crippled children ' to include only those children suffering from orthopedic disabilities, the trend within recent years has been to use the term to include children with neurological, visual, speech and hearing, cardiac and other types of handicapping conditions."

In an article entitled " The Crippled " by Lawrence J. Linck, executive director and corporate secretary, The National Society for Crippled Children and Adults, and published in Social Work Year Book, 1949, appears this statement: " Over the period of the past several years, as the entire field of social work has broadened in aspect, and understanding of the basic problems has deepened as a result of study and experience, the word crippled has taken on a different meaning. From the nar-

rowly defined concept of a crippling condition as an orthopedic defect, there has developed a wider point of view—one which encompasses within the meaning of the word crippled all types of handicaps, including the orthopedic; defects of vision, hearing, and speech; epilepsy; cardiac disorders; and maxillofacial conditions, congenital and acquired, such as cleft lip and palate; hemangioma, burn scars, and so forth.''

Another article in revised form with the same title and by the same author appeared in the Social Work Year Book, 1951 (p. 143), and contains this observation: '' New values and new concepts regarding the crippled, developed in the past two decades, were reemphasized during the war and in the changing economic and social situation of the postwar world. The following cardinal principles have become established: (1) Crippling should be defined not in terms of orthopedic defect only, but in the broadest sense of the word, to include all types of physical handicaps—impairment of vision or hearing, disordered speech, facial and mouth deformities, and others ''.

Harry F. Dietrich, M.D., a member of the division of pediatrics of the Beverly Hills Clinic, and of the department of pediatrics of the School of Medicine of the University of California, in an article entitled '' Protection/Education '', published in the December, 1952, issue of The Crippled Child, makes this statement: '' Not too long ago a ' cripple ' was somebody with a missing leg or a very bad limp. In fact, even today, Webster defines a cripple as a lame, or partially disabled person or animal. In its broadest sense, we have begun to recognize that an individual with impaired action of any organ, body function or part is a cripple.''

An article entitled '' Crippled Children in School '' and published in the United States Office of Education Bulletin, 1948, No. 5 (p. 1), has this observation: '' It is not a simple matter to write a clear-cut statement which will define the heterogeneous group of children known as crippled. Factors which tend to complicate the formulation of a clear-cut definition are: Unstandardized classification procedures; the range in severity of cases; and the often-used method of defining the crippled, according to available resources and services. It is easier to define the term '' blind '' or '' deaf,'' for in these cases the physical limitations are, respectively, in the eyes or in the hearing mechanism. Crippling, on the other hand, affects so many parts of the body and it affects these parts in so many ways that there are literally thousands of manifestations of crippling.''

In the report '' The Crippled Child in New York City '', made by the Mayor's Commission for Study of Crippled Children, 1940, the crippled child is defined as: '' *An individual under 21 years of age who is so handicapped through congenital or acquired defects in the use of his limbs and body musculature, as to be unable to compete on terms of equality with a normal individual of the same age.*''

From the foregoing the fact seems to be apparent that there has been a gradual and general adoption of the broad meaning of the word '' crippled '' and the extension and enlargement of its application. In terms of service the broad meaning and enlarged application are best.

As a result I elect to adopt the same and to define and to determine for the purposes of this proceeding that a crippled child means a person under twenty-one years of age who, by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, has been deprived of strength, activity, or capability for service or use, in any part of the human body.

This definition is very broad and may not be acceptable in all places. Still it springs from extensive research with the benefit of information from many sources, including the usage, speech, acts and mind of the average run of people. These should have much weight in determining the ordinary, usual and accepted meaning of any word.

In passing the fact may be noted that any such definition directly involves and should cover a condition and therefore must be confined to an actual condition of the human body as distinguished from the relation of such body to the outside world.

That such definition covers the intention of the testator and was the meaning he had in mind when using the words '' crippled children '' in his last will and testament finds support in the circumstances surrounding him at the time of and immediately previous to the execution of the instrument.

Decedent was born August 24, 1876. He was a bachelor, and a farmer by occupation. On February 19, 1919, he became a member of the Masonic Fraternity and maintained an active membership to the time of his death. Upon being made a Shriner on May 20, 1927, he automatically became a member of Kalurah Temple.

In the year preceding his death he was made the potentate's representative for the Candor District. In a talk with such

officer, about February, 1950, the purpose, service and work of the Shriners Hospital for Crippled Children were described and explained to him. At the conclusion of the conversation decedent replied to the potentate, " I am sure now, Pote, how I want to leave my estate ".

Data submitted to the court tend to show that the service, work and care at such hospitals are not confined to the crippling of legs, but also include arms, spine, back and body deformities and conditions caused by burns and poliomyelitis.

It is clear to the court and I so find that the intention of the testator was to make an absolute gift of the residue of his estate to Kalurah Temple with the direction that same be used for crippled children generally and that he intended and meant a crippled child to be the person above defined.

Proceed accordingly.