## S93A0748. In re LAST WILL AND TESTAMENT OF JULIA D. LEWIS.
(434 SE2d 472)

HUNSTEIN, Justice.

This case involves the construction of a will made by Julia Lewis (hereinafter "the testatrix") wherein she disposed of the residuary of her estate as follows:

*Item Two*

(a) I give, devise and bequeath one-fourth of my net estate to my sister, Hattie Dunahoo Hill, if she survives me;

---

(b) I give, devise and bequeath one-fourth of my net estate to my sister, Pearl Dunahoo Usry, if she survives me;

(c) I give, devise and bequeath the remainder of my net estate to the descendants of my deceased brothers, William House Dunahoo and Horace Lucius Dunahoo, share and share alike, per stirpes, namely: Ann Dunahoo Burke, William Simpson Dunahoo, Thomas David Dunahoo, Marie Dunahoo Smith, Jerrye Dunahoo Purcell, Eva Jo Dunahoo Benton, Horace Ray Dunahoo, William Terry Dunahoo and Donald House Dunahoo.

(d) Should my sister, Hattie Dunahoo Hill, predecease me, the legacy hereinabove made to her shall lapse and be added to that portion of my estate to be distributed under subparagraph (c) of this Item, and in that event, the names of her descendants, Jean Hill Bullock and Louise Hill Etheridge, shall be added to the legatees named in said subparagraph (c) and they shall share in the distribution as therein directed and on the terms therein specified.

(e) Should my sister, Pearl Dunahoo Usry, predecease me, the legacy hereinabove made to her shall lapse and be added to the remainder of my estate to be distributed under subparagraph (c) of this Item, and, in that event, the names of her descendants, Marian Usry Wood and William Dunahoo Usry, shall be added to the legatees named in said subparagraph (c) and they shall share in the distribution as therein directed and on the terms therein specified.

(f) If any of the legatees named in this Item should predecease me, leaving no lineal descendants, the legacy herein made to such deceased legatees shall lapse.

Claiming that the words "share and share alike, per stirpes" in Item 2(c) of the will were ambiguous, the executrix of the estate of Julia Lewis filed a petition in superior court seeking a construction of the will. The three children of William Dunahoo (appellants herein) and the six children of Horace Dunahoo (appellees herein) filed responses to the petition together with affidavits in support of their respective arguments. The trial court, sitting without a jury, concluded that the intent of the testatrix could be gleaned from a review of the will alone, in its entirety and without regard to the proffered parol evidence. The court then determined that it was the intent of the testatrix that the distribution under Item 2(c) be per capita and therefore ordered that the residuary of the testatrix' estate be distributed equally among all of the nine nieces and nephews named in Item 2(c).

1. Both appellants and appellees concede that the language employed by the testatrix in Item 2(c) is inconsistent; however, appel-

lants maintain that the testatrix' intent with regard to distribution under that provision is not clearly discernible by reference to any other provisions in the will. Accordingly, they assert, the trial court erred in construing the will in the manner which it did rather than construing it consistent with the Georgia statute of distribution[1] (per stirpes distribution). We disagree.

In the absence of anything in the will indicating a contrary intent, it will be presumed that the testator intended that the estate should go " 'where the law carries it, which is supposed to be the natural channel of descent and that the use of such terms as . . . "share and share alike" . . . would not alone be sufficient to overcome this presumption. . . .' [Cit.]" *Harrison v. Odom*, 241 Ga. 284, 285 (244 SE2d 874) (1978). In other words, it will be presumed that the testator intended a per stirpes distribution as would occur by law in the event of intestacy.

However, in the construction of a will, it is a cardinal rule, imposed by statute, that the court shall strive diligently to ascertain the intent of the testator and give effect to it so far as consistent with the law. OCGA § 53-2-91; *Kirby v. C & S Nat. Bank*, 235 Ga. 205 (219 SE2d 112) (1975).

> In finding the testator's intent, [the court is] not limited to construing only the residuary clause in question, but may look to "the four corners" of the will to discover the testator's total testamentary disposition.

Id. at 206. Therefore, inasmuch as Item 2(c) itself does not plainly manifest an intent of the testatrix contrary to the legal presumption that distribution should be per stirpes, the trial court did not err in attempting to construe the apparently inconsistent language of Item 2(c) in the context of the entire Item 2.

Having examined all of Item 2, neither did the trial court err in concluding that the testatrix' use of the phrase "share and share alike, per stirpes" in Item 2(c), while confusing, was not inadvertent, but instead was part of a logical and consistent scheme for the per capita distribution of the residuary estate. Evidence of the testatrix' scheme becomes apparent by reference to Items 2(d) and 2(e) wherein the testatrix conditioned the bequests to her sisters (Items 2[a] and 2[b]) upon their surviving her. In the absence of the condition, Geor-

---

[1] OCGA § 53-4-2 (5) provides:
Brothers and sisters of the intestate shall stand in the second degree and shall inherit if there is no surviving spouse, child, or representative of a child . . . . The children or grandchildren of deceased brothers and sisters shall represent and stand in the place of their deceased parents . . . .

gia's anti-lapse statute[2] would have resulted in the distribution of a predeceased sister's one-fourth share to that sister's descendants per stirpes, that is, the deceased sister would be a "stirp" or root. But the survival conditions in Items 2(a) and 2(b), when considered together with the lapse provisions of Items 2(d) and 2(e) and the testatrix' direction that the *names* of the *daughters* of a predeceased sister should be added to those names of nieces and nephews appearing in Item 2(c) (all being the children of predeceased brothers) supply convincing indication of the testatrix' intent, through per capita distribution, to treat equally all children of the testatrix' *predeceased* siblings.[3]

The construction adopted by the trial court does not, however, render meaningless the testatrix' use of the term "per stirpes" in Item 2(c) when that item is considered, together with Item 2(f), in the context of class gifts. The general rule in the case of class gifts is that a predeceased legatee's share of such gift would be distributed equally among surviving class members, notwithstanding that the predeceased legatee had lineal descendants, "unless the testator has provided that the issue shall take." 1 Redfearn, Wills, Ga. § 164 (5th ed. 1988) at 352. By implication, Item 2(f) *is* the expression of that provision by the testatrix: The predecease of an Item 2(c) legatee would result in that legatee's lineal descendants, if any, taking their deceased ancestor's share by representation, that is, per stirpes.

Appellants have cited this Court to several cases[4] which have construed wills with dispositive language similar to that employed by the testatrix in Item 2(c), which, they argue, are persuasive authority for a reversal of the trial court's construction of the ambiguous Item 2(c). However, many of these same cases have been cited by the appellees, either in support of their argument or as being distinguishable by involving interpretation of the ambiguous provision without

---

[2] OCGA § 53-2-103 provides as follows:

If a legatee or devisee is dead when the will is executed or dies before the testator, but has issue living at the death of the testator, the legacy or devise, if absolute and without remainder or limitation, *shall not lapse* but shall vest in the issue in the same proportions as if it were inherited directly from their deceased ancestor. (Emphasis supplied.)

[3] This would not be the result if the residuary estate were distributed per stirpes under Item 2(c) for the testatrix did not direct that the name of a deceased *sister* should be added to those of her deceased brothers in Item 2(c) to act with them as roots or "stirps"; unlike their cousins, children of the testatrix' predeceased brothers, the daughters of a predeceased sister could not have taken their mother's share by representation.

[4] See *Bennett v. Lloyd*, 245 Ga. 706 (267 SE2d 3) (1980); *Humphrey v. Lawson*, 225 Ga. 803 (171 SE2d 534) (1969); *MacGregor v. Roux*, 198 Ga. 520 (32 SE2d 289) (1944); *Bradlee v. Converse*, 318 Mass. 117 (60 NE2d 345) (1945); *In re Ives' Estate*, 161 Misc. 60 (291 N.Y.S. 981) (1936); *Camden Safe Deposit &c. Co. v. MacMullan*, 112 N.J. Eq. 574 (165 A 105) (1933).

the aid of other provisions of the will.[5] In examining these authorities, we are guided by the cautionary observation of this Court in *MacGregor v. Roux*, 198 Ga. 520, 523 (32 SE2d 289) (1944), that

> [t]he primary consideration in construing wills is the ascertainment of the intention of the testator. Each will is a law in itself. General rules of construction must necessarily be considered, but previously adjudged cases may be of little authority and even dangerous to apply, and only cases which are in every respect directly in point and agree in every circumstance will afford much aid in determining the testator's intention.[6]

Having discovered no such case and bearing in mind the obligation of the court to ascertain the intent of the testatrix with reference to the whole will and to attempt to give effect thereto,[7] we conclude that the trial court did not err in thus expanding its scrutiny beyond Item 2(c) and, consequently, construing that provision as requiring a per capita distribution.

2. In light of our determination in Div. 1 that the trial court did not err by ruling that the testatrix' intent was manifest within the body of the will itself, we need not address appellants' remaining enumeration that the trial court erred by refusing to rely on affidavits submitted by the parties.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 1993.

*Freeman & Hawkins, Cullen C. Wilkerson, Jr.,* for appellants. *McLoed, Benton, Begnaud & Marshall, Terrell W. Benton, Jr.,*

---

[5] See *Bennett v. Lloyd*, supra, (nieces and nephews construed as being primary legatees, therefore being stirps and taking per capita shares; court dealt only with ambiguous provision); *MacGregor v. Roux*, supra, (direction to distribute estate "equally" among several grandchildren construed to require per stirpes distribution since the testator specifically stated "not per capita"); *Bradlee v. Converse*, supra, (court examined only the ambiguous provision, directed per stirpital distribution); *In re Ives' Estate*, supra, (direction to distribute to nieces and nephews "share and share alike, per stirpes and not per capita" construed to require per capita distribution as nieces and nephews comprised class of primary legatees); *Camden Safe Deposit &c. Co. v. MacMullan*, supra, (distribution to eight nieces "share and share alike per stirpes and not per capita" construed as requiring per capita distribution because nieces are primary legatees).

[6] However, we also note the rule stated in *MacGregor*, supra, that used in the strict sense, "per stirpes" may be applied only to those legatees who are substituted; that is, who stand in the place of original legatees, and cannot be applied to ancestors of the class who are legatees.

[7] 1 Redfearn, Wills, Ga., § 142 (5th ed. 1988); *Armstrong v. Merts*, 202 Ga. 483 (43 SE2d 512) (1947).

*David K. Linder, N. David Wages,* for appellees.